UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RODRIGUE ABELLARD, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action 25-cv-11612-IT |
| | * | |
| WILLIAM J. GALVIN, et al., | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM AND ORDER

November 13, 2025

TALWANI, D.J.

Plaintiff Rodrigue Abellard, Jr., proceeding *pro se*, has filed a Complaint [Doc. No. 1],
Motion for Leave to Proceed *in Forma Pauperis* [Doc. No. 2], and Motion to Amend [Doc. No.
3]. For the reasons set forth below, the court will GRANT the motion for leave to proceed *in
forma pauperis*, GRANT the motion to amend, and order Plaintiff to file an amended complaint
if he wishes to proceed with this action.

**I.       Motion for Leave to Proceed in Forma Pauperis**

Upon review Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. No. 2], the
court concludes that Plaintiff has adequately demonstrated that he is without income or assets to
pay the $405 filing fee. Accordingly, the court GRANTS the motion.

**II.      Review of Plaintiff's Complaint**

Because Plaintiff is proceeding *in forma pauperis*, the court may conduct a preliminary
review of complaint and dismiss any claim that fails to state a claim upon which relief may be
granted. See 28 U.S.C. § 1915(e)(2)(B)(ii). The court may also consider jurisdictional matters
*sua sponte*. See Riley v. Bondi, 606 U.S. __, 145 S.Ct. 2190, 2201 (2025) ("A federal court must

always satisfy itself that it has jurisdiction."). In conducting this review, the court construes

Plaintiff's complaint liberally because he is proceeding *pro se*. See <u>Haines v. Kerner</u>, 404 U.S.

519, 520-21 (1972).

### A.    Factual Background as Alleged in the Complaint

Plaintiff's complaint is submitted on a preprinted form, Pro Se 1 (Complaint for a Civil

Case) [Doc. No. 1], with an attached single-spaced, sixty-six page document, Attachment [Doc.

No. 1-1 at 14-63].[1] Abellard asserts that "[t]he Massachusetts Department of Children and

Families ("DCF"), the Massachusetts Trial Courts, and associated officials named herein

deprived the Plaintiff Rodrigue Abellard Jr., of his constitutionally protected right to parent his

children, without any lawful adjudication of unfitness, and in willful disregard of clear medical

evidence, court orders, and federal law." <u>Id.</u> at 14.

The Complaint is brought against numerous named and unnamed Defendants.  The

Defendants named on the preprinted Complaint form are William Galvin, Secretary of the

Commonwealth of Massachusetts; Assistant Attorney General Andrea Lynn Davulis; DCF

Commissioner Staverne Miller; former DCF Commissioner Linda Spears; Talia Simonds, court-

appointed attorney; Judge Thomas Barber; Judge Maureen Monks; Edwin Welch, Probation

Officer; John Bello, court administrator; Judge Jeffrey A. Locke; and Edward J. Nolan,

Commissioner of Probation. Doc. No. 1 at 2-4. The attachment adds as Defendants the

Massachusetts Office of the Child Advocate and the DCF Ombudsman, <u>id.</u> at 8 ¶¶ 9-10,  the

Massachusetts Trial Court, the Suffolk Probate and Family Court, the Middlesex Probate and

Family Court, <u>id.</u> at 8 ¶¶ 11-13, "unknown agents and employees of DCF, <u>id.</u> at 7 ¶ 8, "unknown

---

[1] Citations to items on the court's electronic docket reference the document number and page
number assigned by CM/ECF ("Doc. No. __ at __").

DCF, trial court, medical (therapist, counselors), social services, and administrative staff," id.,

and "unidentified court officials, judges, clerks, probation officers, and registry staff[,]" id. at 9

¶ 17.

According to Abellard, in February 2015, he was granted "informal kinship placement of

his three minor children [identified here by their initials N.A., T.H. and K.A.]. Id. at 19 ¶ 7.

Although the instant action primarily concerns N.A. and T.H., Abellard highlights "the tragic

death of their older sibling [K.A.] in 2022 due to untreated severe obstructive sleep apnea- a

medical condition that Plaintiff warned DCF about in writing and through documentation." Id. at

21 ¶ 25.

Plaintiff alleges that he was adjudicated in 2017 as "the biological and legal father of

[N.A.]" and the Suffolk Probate and Family Court "directed the amendment of N.A.'s birth

certificate." Id. at 19 ¶ 8. Plaintiff alleges that DCF "failed to transmit the judgment to the

Registry of Vital Statistics, causing Plaintiff's legal status as father to be erased from official

records and critical decision-making processes." Id. Abellard contacted the Registry of Vital

Statistics from 2018-2022 and "confirmed that the Suffolk Probate and Family Court had never

submitted the 2017 paternity order for [N.A.]." Id. at 21 ¶ 23. As a result, "Plaintiff was excluded

from school communications, medical appointments and legal filings involving [N.A.]." Id. at 19

¶ 9. After N.A. was diagnosed with a congenital heart condition, Plaintiff made a request to DCF

"to be included as a decision-maker on all medical matters." Id. at 19 ¶ 10. Plaintiff states that

"DCF blocked Plaintiff's access to [N.A.'s] health information, excluded him from clinical

decision-making, and failed to notify him when a June 2024 echocardiogram appointment was

cancelled by the maternal guardian." Id. at 20 ¶ 11. Despite the judicial establishment of his

paternity, Plaintiff states that "DCF's refusal to recognize [Plaintiff's] legal status placed

[N.A.'s] heath at significant risk and reflected a broader institutional pattern of deliberate
indifference to medical needs – especially where fathers are involved." <u>Id.</u> at 20 ¶ 12.

As to his minor son T.H., Abellard states that he "has consistently attempted to establish
paternity for [T.H.] through filings beginning in August 2022, but DCF and the Probate Court
system have failed to process, docket, or adjudicate these efforts." <u>Id.</u> at 20 ¶ 13. Plaintiff states
that "court officials have blocked access to [T.H.'s] records, withheld hearing dates, and rejected
procedural filings – citing Plaintiff's lack of 'legal father' status while simultaneously refusing to
process the paperwork required to establish that status." <u>Id.</u> at 20 ¶ 14. Abellard contends that the
"so-called 'Phantom Husband' rule" was continuously invoked and prevented Abellard from
being "recognized as the father of either child unless he first located [the mother's] long-
estranged husband." <u>Id.</u> at 20 ¶ 16. Abellard states that "DCF had access to the Federal Parent
Locator Service but never used it [to locate the mother's estranged husband]." <u>Id.</u> at 20 ¶ 18.
Abellard contends that the "effect of this presumption" became "a mechanism through which
DCF and the courts denied Plaintiff's access to his children, undermined valid court orders, and
blocked medical oversight – without ever holding a fitness hearing or acknowledging Plaintiff's
adjudicated status." <u>Id.</u> at 21 ¶ 19.

According to Abellard, from 2017-2022, "fraudulent" restraining orders were issued
against him "as a strategic mechanism to shield custody and paternity matters from meaningful
review." <u>Id.</u> at 21 ¶ 20. After an unspecified hearing, Abellard "was detained overnight and
denied the opportunity to present exculpatory evidence." <u>Id.</u> at 21 ¶ 21. Abellard states that the
"order was used by DCF to further restrict Plaintiff's access to educational, legal, and health-
related records for [N.A. and T.H.] despite the absence of any underlying criminal allegations or
verified threat." <u>Id.</u>

Over a 9-year period, Abellard filed formal complaints to the DCF Ombudsman, the Massachusetts Office of the Child Advocate and other oversight bodies. Id. at 21 ¶ 22. Abellard states that "not a single complaint was investigated or acknowledge" and that "independent review or corrective action has ever been undertaken." Id.  Abellard states that after he filed a formal civil rights complaint with the United States Department of Health and Human Servies Office for Civil Rights, the matter was referred to the United States Department of Justice. Id. at 21 ¶ 24.

Abellard contends that T.H.'s "paternity remains unadjudicated not due to Plaintiff's inaction, but because of DCF's refusal to facilitate hearings, the court's failure to issue summons, and a coordinated pattern of administrative inaction. Id. at 22 ¶ 29. Plaintiff states that "unfit custodians have been favored without scrutiny." Id. at 22 ¶ 31. Abellard contends that he has been "erased as a parent [by a system of] omission, resistance, and systemic discrimination." Id. at 22 ¶ 32. Abellard states that as "a Black father, [he[ has encountered heightened scrutiny, procedural obstruction, and diminished legal recognition in contract to how similarly situated white parents are treated within the same jurisdiction." Id. at 22 ¶ 33. Abellard states that "[t]his entrenched patter of obstruction and exclusion demands immediate federal intervention." Id. at 23 ¶ 34. Abellard states that he "has exhausted every avenue of redress" and now "suffers the consequences of a system designed not to reunify families, but to erase parents without a hearing." Id. at 23 ¶ 35.

**B       Claims for Relief**

Plaintiff brings 18 claims, which include claims for violations of his federal constitutional rights (equal protection, due process, access to the courts, retaliation), racial discrimination in violation of 42 U.S.C. § 2000d (Title VI), civil conspiracy, false imprisonment, negligence,

breach of fiduciary duty and intentional infliction of emotional distress. <u>See</u> Attachment [Doc. No. 1-1] at 23-47.

In his prayer for relief, Plaintiff seeks declaratory relief, injunctive relief, damages, and attorney's fees. <u>Id.</u> at 49-51. With regard to injunction relief, Abellard asks that the court (1) adjudicate Plaintiff as sole legal and physical custodian of N.A. and T.H.; (2) enter judgment establishing paternity of Plaintiff for T.H. under M.G.L c. 209C; (3) vacate certain guardianship, no-contact and restraining orders; (4) expunge certain restraining orders and domestic-related charges from certain civil records; (5) compel DCF and affiliated agencies to recognize Plaintiff as sole legal parent; (6) order DCF to file medical documentation and ensure that N.A. receives medically necessary testing and follow-up care; (7) prohibit any future removal of Plaintiff's children from his custody "absent a sworn affidavit establishing imminent risk and a signed judicial warrant based on probable cause," and (8) appoint a special master to oversee DCF and court compliance." <u>Id.</u> at 49-50 ¶¶ 2(a)-(h).

### C.    Pleading Requirements of the Federal Rules of Civil Procedure

Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and "'give [each] defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957). This means that the complaint needs to sufficiently identify the alleged misconduct of each defendant so that he or she has fair notice of the nature of the claim the plaintiff is asserting and the factual grounds upon which it rests. <u>See Silverstrand Invs. v. AMAG Pharm., Inc.</u>, 707 F.3d 95, 101 (1st Cir. 2013). A "complaint should at least set forth minimal facts as to who did what to whom, when, where, and why—although why, when why means the actor's state of mind, can

be averred generally." <u>Educadores Puertorriqueños en Acción v. Hernandez</u>, 367 F.3d 61, 68 (1st Cir. 2004).

In determining whether the complaint provides a defendant adequate notice of the plaintiff's claim and shows that the plaintiff is entitled to relief, the court only considers "well-pleaded" factual allegations. In other words, allegations that consist merely of "labels and conclusions" are not credited. <u>Twombly</u>, 550 U.S. at 555. Similarly, "'naked assertion[s]' devoid of 'further factual enhancement' " do not suffice. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (alteration in original) (quoting <u>Twombly</u>, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." <u>Id.</u> at 679.

Here, despite its length, the Complaint alleges no specific, individual actions or inactions taken by individual Defendants. The complaint does not spell out specifically what each Defendant is alleged to have done. Nor, to the extent that there was a failure to act, does the complaint spell out what duty(ies) the Defendants may have specifically violated. Thus, the factual allegations do not meet the requirements of Rule 8(a)(2).

### D.    Legal Defects in the Complaint

Plaintiff's Complaint also suffers from a number of legal defects.

### 1.    Rooker-Feldman Doctrine

Plaintiff seeks to have this federal court review and reject judgements entered in various state court proceedings.[2] A search of the public website <<u>https://www.masscourts.org</u>> indicates

---

[2] The court takes judicial notice of relevant state court proceedings. <u>See</u> <u>Wiener v. MIB Group, Inc.</u>, 86 F.4th 76, 81 n.3 (1st Cir. 2023) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." (quoting <u>Law Offices of David Efron v. Matthews & Fullmer Law Firm</u>, 782 F.3d 46, 56 n.7 (1st Cir. 2015))); <u>Berrios-Romero v. Estado Libre Asociado de Puerto Rico</u>, 641 F.3d 24, 27 (1st Cir. 2011) ("A decision of a sister court is a proper matter of judicial notice.").

that Abellard is listed as a party in the following 10 state cases: <u>Rodrigue v. Charles</u>,
M122W1039WD (Middlesex Probate & Family Ct, Mass.) (complaint to establish parentage);
<u>Rodrigue v. Napolitano</u>, M122W0680WD (Middlesex Probate & Family Ct, Mass.) (complaint
for modification of custody, support, parenting time); <u>Rodrigue v. Ahart-Upshaw</u>, M17W687WD
(Middlesex Probate & Family Ct, Mass.) (complaint for modification of custody, support,
parenting time); <u>Rodrigue v. Ahart-Upshaw</u>, M17W688WD (Middlesex Probate & Family Ct,
Mass.) (complaint for modification of custody, support, parenting time); <u>Rodrigue v. Upshaw</u>,
M16W0030WD (Middlesex Probate & Family Ct, Mass.) (complaint for modification of
custody, support, parenting time); <u>Rodrigue v. Upshaw</u>, M16W0028WD (Middlesex Probate &
Family Ct, Mass.) (complaint for modification of custody, support, parenting time); <u>Mass. Dep't
of Rev. on behalf of Tara Napolitano v. Abellard</u>, M12W1291PA (Middlesex Probate & Family
Ct, Mass.) (Complaint for Child Support); <u>Ahart-Upshaw v. Abellard,</u> M108W688WD
(Middlesex Probate & Family Ct, Mass.) (complaint to establish paternity); <u>Napolitano v.
Abellard</u>, MI05W0750CA (Middlesex Probate & Family Ct, Mass.) (complaint for support); and
<u>Mass. Dep't of Rev. on behalf of Larrysha Ahart-Upshaw v. Abellard</u>, M102W0846CA
(Middlesex Probate & Family Ct, Mass.) (complaint to child support).

  Pursuant to 28 U.S.C. § 1257, the Supreme Court of the United States has jurisdiction to
review the final state judgment where the judgment presents a question of federal law. <u>See</u> 28
U.S.C. § 1257. The Supreme Court has held that the grant of jurisdiction under § 1257 "is
exclusive," meaning that federal judicial review of final state court judgments "may be had *only*
in [the Supreme] court." <u>Lance v. Dennis</u>, 546 U.S. 459, 463 (2006) (quoting <u>D.C. Ct. of</u>

Appeals v. Feldman, 460 U.S. 462, 482 (1983)). Thus, under the Rooker-Feldman doctrine,[1] a district court does not have jurisdiction over an action brought by a party who lost in state court and who is "seeking review and rejection of that judgment" in a lower federal court. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005); see also Reed v. Goertz, 598 U.S. 230, 235 (2023) (stating that the Rooker-Feldman doctrine "prohibits federal courts from adjudicating cases brought by state-court losing parties challenging state-court judgments"). Under the Rooker-Feldman doctrine, the court lacks jurisdiction to do so. Instead, "the proper forum for challenging an unlawful state court ruling is the United States Supreme Court, on appeal of the highest state court's final judgment." Davison v. Gov't of Puerto Rico-Puerto Rico Firefighters Corps, 471 F.3d 220, 223 (1st Cir. 2006).

### 2. **42 U.S.C. § 1983 Claims**

Section 1983 provides a cause of action against any "person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The Commonwealth and state agencies, such as DCF, are not "persons" under Section 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989) ("[A] State is not a person within the meaning of § 1983."). Thus, the Commonwealth and defendant state agencies are not "persons" subject to suit for damages within the meaning of § 1983.

In addition, "only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable." Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir.

---

[1]The term "Rooker-Feldman doctrine" is shorthand reference to the Supreme Court's interpretation of 28 U.S.C. § 1257 in District of Columbia Ct. of Appeals v. Feldman, 460 U.S. 462 (1983) and Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).

2005). In other words, a commissioner or other supervisory employer cannot be held liable under § 1983 based solely on the misconduct of a subordinate; the supervisor must have had some form of direct involvement in the alleged misconduct. See id. at 129-30; Ouellette v. Beaupre, 977 F.3d 127, 140 (1st Cir. 2020) (stating that "respondent superior" does not apply to § 1983 actions and, therefore, "a § 1983 claim premised on a theory of supervisory liability must plead an 'affirmative link between the behavior of a subordinate and the action or inaction of his supervisor.'" (quoting Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir. 2011))).

Finally, a civil rights conspiracy claim under § 1983 involves "'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.'" Sánchez v. Foley, 972 F.3d 1, 11 (1st Cir. 2020) (quoting Est. of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008)). The plaintiff must show both a "conspiratorial agreement" and "an actual abridgment of some federally-secured right." Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001). A conspiracy may be a "matter of inference." Estate of Bennett, 548 F.3d at 178. However, "a claim of conspiracy to deprive a plaintiff of civil rights will not survive a motion to dismiss if it makes conclusory allegations without making supporting factual assertions." Diaz v. Devlin, 229 F.Supp.3d 101, 111 (D. Mass. 2017) (citing Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977).

Plaintiff's Complaint fails to plead sufficient facts to state a plausible § 1983 claim against the defendants.

### 3. <u>Eleventh Amendment</u>

The Eleventh Amendment prohibits suits against a state in federal court unless Congress has abrogated sovereign immunity, or the state has waived it. <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985); <u>see</u> <u>Wojcik v. Massachusetts State Lottery Comm'n</u>, 300 F.3d 92, 99 (1st Cir. 2002). It is well settled that Congress did not abrogate Eleventh Amendment sovereign immunity by enacting 42 U.S.C. § 1983. <u>Will</u>, 491 U.S. at 66. There is nothing to indicate here that the Commonwealth has waived Eleventh Amendment sovereign immunity, consenting to suit in federal court under § 1983. <u>See</u> <u>Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.</u>, 527 U.S. 666, 676 (1999) (setting out "stringent" test to find waiver of sovereign immunity, including state's voluntary invocation of federal jurisdiction and clear declaration of intent to submit to federal jurisdiction). Eleventh Amendment sovereign immunity extends to "arm[s] of the state[s]." <u>Wojcik</u>, 300 F.3d at 99. This includes state officials acting in their official capacities; absent congressional abrogation or waiver, a state actor is protected from an "official capacity" suit for monetary damages. <u>Will,</u> 491 U.S. at 71. In light of this, the § 1983 claims against the Commonwealth, agencies and officials in their official capacities are subject to dismissal.

### 4. <u>Anti-Injunction Act</u>

"Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately [the United States Supreme] Court." <u>Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs</u>, 398 U.S. 281, 287, (1970). The Anti-Injunction Act, 28 U.S.C. § 2283, prohibits the Court from providing some of the relief Plaintiff seeks. This statute provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except

as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The Anti-Injunction Act's "core message is one of respect for state courts," and it "commands that those tribunals 'shall remain free from interference by federal courts.'" Smith v. Bayer Corp., 564 U.S. 299, 306 (2011) (quoting Atlantic Coast Line R. Co. v. Locomotive Eng'rs, 398 U.S. 281, 282 (1970)). Thus, much of the injunctive relief sought in the complaint is barred by the Anti-Injunction Act.

## IV.    **Motion to Amend**

Under the Federal Rules of Civil Procedure, at this stage of the litigation Plaintiff may amend his complaint once without the court's permission. See Fed. R. Civ. P. 15(a)(1). Accordingly, the court grants Plaintiff's Motion for Leave to Amend [Doc. No. 3].

Although it is difficult to discern from the original Complaint whether any of the allegations could form the basis of a viable pleading, it is conceivable that Plaintiff could present a plausible claim in an amended complaint. If Plaintiff believes that he can assert such a claim, he may file an amended complaint which cures the pleading deficiencies noted above.

Because an amended complaint completely supersedes an original complaint, see Brait Builders Corp. v. Mass., Div. of Cap. Asset Mgmt., 644 F.3d 5, 9 (1st Cir. 2011), Plaintiff may not rely on anything in the original complaint that is not specifically set forth in the amended complaint. An amended complaint must be a standalone document; the Court will not consider factual allegations found elsewhere (e.g., in administrative records, state court records).

## V.    **Conclusion**

In accordance with the foregoing, the Court hereby orders:

1.    The Motion for Leave to Proceed *in Forma Pauperis* [Doc. No. 2] is GRANTED.

2.    The Motion to Amend [Doc. No. 3] is GRANTED.

3.    If Plaintiff wishes to proceed with this action, he must, within twenty-eight (28) days, file an amended complaint that cures the pleading deficiencies of the original complaint and that states a plausible claim for relief. Failure to do so will result in dismissal of this action.

IT IS SO ORDERED.

/s/ Indira Talwani
United States District Judge

Dated: November 13, 2025